IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAURA D. GIFFIN,                                          Civil No. 6:15-cv-00800-PK

        Plaintiff,

                                          FINDINGS AND

v.                                                       RECOMMENDATION

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff Laura D. Giffin filed this action May 11, 2015, seeking judicial review of the

Commissioner of Social Security's final decision denying her application for disability insurance

benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social

Security Act.   This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g)

and 1383(c)(3).

Page 1 - FINDINGS AND RECOMMENDATION

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be affirmed.

## BACKGROUND

Giffin protectively filed her applications on July 31, 2012, alleging disability beginning on November 30, 2010, due to "diabetes/asthma, depression/anxiety, ob/gyn, sleep apnea, ulcers, high cholesterol, arthritis, [and] neuropathy." Tr. 247. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge (ALJ). Tr. 160-61, 36-70. At the January 15, 2014, hearing Plaintiff amended her onset date to June 27, 2012. Tr. 40. On February 11, 2014, the ALJ found Giffin not disabled. Tr. 15-35. The Appeals Council denied review, and on May 11, 2015, Giffin sought review in this court.

Giffin contends the ALJ erred by failing to find bipolar disorder and recurrent major depression severe at step two, by finding her less than fully credible, by failing to give proper weight to medical evidence, by failing to develop the record, and by failing to properly assess her residual functional capacity after completing step three, and for that reason erred by finding Giffin capable of performing work at step five of the process.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See*

Page 2 - FINDINGS AND RECOMMENDATION

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).   If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(I), 416.920(b).   Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).   The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141.   If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record.  *See* 20 C.F.R. § 404.1520(e), 416.920(e).  The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments.  *See* 20 C.F.R. §§ 404.1545(a) 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

---

[1]  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - FINDINGS AND RECOMMENDATION

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

**LEGAL STANDARD**

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

### SUMMARY OF ADMINISTRATIVE RECORD[2]

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

Giffin was 34 years old on her alleged onset date of June 27, 2012. Tr. 28.[3] She previously filed applications for disability in September 2005 and October 2010, which were denied at the initial determination level without appeal. She has a ninth grade education, and has worked as a cook and an institutional cook. Tr. 63.

## I. The Medical Record

The parties are familiar with the extensive medical record. Therefore, it will be set out below when relevant.

## II. The Adult Function Report

Plaintiff completed an Adult Function Report in December 2010 in which she stated it was "hard and very painful" to stand all day at work, and hard to concentrate on her job due to fatigue. Tr. 261. She worked as an institutional cook from 5:00 a.m. to about 1:00 p.m., and napped after work. Her son helped her clean the house, do laundry, and cook meals. She could no longer walk for exercise, and pain interfered with her sleep sometimes. Tr. 262. It was hard to tie her shoes because bending over caused pain, and difficult to get into and out of the bath tub. Plaintiff prepared simple meals weekly because she was too tired or in too much pain to prepare a full meal. Tr. 263. She did her laundry, cleaned her bedroom and bathroom, and sometimes loaded the dishwasher or straightened up the living room. Tr. 264. She did not do yard work because it was too hard to get up and down to pull weeds, and mowing hurt her legs.

Plaintiff stated that she does not drive very much because it made her legs and feet hurt. She could go out alone but did not like to go anywhere by herself. She shopped for household

---

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 14.

supplies twice a month for about 45 minutes and grocery shopped about once a week for about an hour and a half. She watched television and worked on a computer, but no longer hiked, fished, or swam. She usually had someone go with her to stores "just in case something goes wrong." Tr. 265. Plaintiff no longer saw friends because she was either too tired or in too much pain. Tr. 266. She could walk about a block before resting for five minutes, and could pay attention "as long as I am needed to." Tr. 266. Plaintiff stated she did not handle stress well, it made her sick, and changes in routine caused anxiety and panic attacks. She used a motor cart while shopping in stores, and used a cane. Plaintiff denied that her medications caused side effects.

Plaintiff noted she had many health issues, and said because she had diabetes, she had a lot of colds, bronchitis, and "bacterial infections, bladder infections, and pelvic infections." Tr. 268. "I have to make myself get up every morning and go to work even when I'm sick or in pain cause I have to have income to support my family. I think it would be a lot better for my family and me if I was to get SSD . . . . I certainly will feel better if I didn't have to work." Tr. 268.

**III. The Hearing Testimony**

Plaintiff testified at the January 2014 hearing. She was represented by counsel. Tr. 38. Plaintiff completed the ninth grade. Tr. 41. She attempted to complete a GED "several times and I just couldn't do it." *Id.* "I can't concentrate, and I just feel like I just can't do it." *Ibid*

She was the lead cook at Levitan Care Center for six and a half years, until June 2012. Plaintiff did all of the cooking and "a lot of heavy lifting and standing on my feet all day long for eight hours straight, a lot of walking." Tr. 42-43. She wore a pedometer and averaged over 20,000 steps per day. Before the job as lead cook she worked as a cook in a different care facility for nine months.

By the time her job at Levitan ended Plaintiff had trouble performing the work.  Tr. 44. "It was hard to lift.  It was hard to do anything; to stand, lift, walk, even just to cook.  It was hard to serve the food."  *Id.*  Plaintiff had neuropathy in her legs and back pain.  "And nobody could figure out what was wrong until here recently I just went to a neurologist and they found out that I have back problems.  But I was having a lot of back pain."  Tr. 45.  Her entire back hurt, from the neck down, and "it was there all the time."  Tr. 46.  Lifting more than ten pounds made the pain worse.  She put a step stool at the prep counter to rest one foot on.  Her "whole body [hurt] just standing there."  Tr. 47.  Plaintiff had pain, numbness, and tingling in her legs and toes, worse at work than at home.  She stayed in bed the rest of the day after work.  The pain and numbness in her legs was made worse by "[e]verything," as the job required constant movement on a tight time line.

Plaintiff took a leave of absence in June 2012 and then advised the care center that she was not coming back.  Tr. 48.  She explained that "towards the end I started making any excuse in the world not to go in because I started getting to the point where I was in so much pain that I started having like panic attacks and anxiety attacks."  *Id.*  Once she almost passed out at work. She started feeling bad when it was time to go to work or while at work.  "I didn't want to be there because I was in pain and. . . I didn't feel good."  Tr. 48-49.  Panic attacks caused shortness of breath, dizziness, darkness, and light spots.   She had mental problems while working, including depression, anxiety and panic attacks.  Her boss was rude and she would cry.  "I hated going there because I didn't want to have to deal with him."  Tr. 50.  She felt like she might pass out, had shortness of breath, and her face and ears got hot.

She sees a psychiatrist once a month.  The doctor wants Plaintiff to attend a group counseling session, but Plaintiff testified "I can't handle a - - to be around a group because it's hard for me to be around people that I don't know."  Tr. 52.  It makes her nervous and she has panic attacks.  Plaintiff goes shopping once a month but she does not like it.  At least once or twice a month Plaintiff goes shopping but does not complete it because she leaves the store.  Her doctor advised her to name her panic attacks, and Plaintiff calls the panic attacks "Kerry," which helps.  She takes Clonidine and Klonopin, which make the symptoms less severe though they do not go away.  Plaintiff was taking Zoloft, Abilify, and oxycodone, as well as multiple medications she could not name.  Tr. 54.  Sometimes the medications cause fatigue, though she also has insomnia.

Plaintiff reported she had headaches at least once or twice a month.  Tr. 55.  She had been to urgent care twice in the past two days for headaches.  When she has a headache she cannot function.  The headaches can last for a week.  She does "very little" around the house.  Tr. 56.  She washes some dishes.  Her husband and teen-aged children do most of the work.  Sometimes she starts the laundry, "it just depends on what date - - what kind of day it is for me, on how bad my back is, and how bad I feel.  There's some days I don't even get out of bed."  Tr. 57.  At least once a month she is in bed for a couple of days because of pain, depression or headache.  She spends her time watching television and playing games on her computer.  Tr. 58.

She can sit for about 20 minutes before she needs to move around "because when I sit down I feel like I'm squashing my tailbone."  *Id.*  She has no friends and no social activities.  Her husband is on disability for bipolar disorder.  Tr. 60-61.  Plaintiff and her husband have been

together since 2011.  Plaintiff testified that her back, leg and feet problems have not improved since she quit working.

## ALJ FINDINGS

The ALJ applied the sequential disability determination process described above.  At step one, the ALJ found Giffin had not engaged in substantial gainful activity from her alleged onset date of June 27, 2012.  Tr. 20.

At step two, the ALJ found Giffin had the severe impairments of degenerative disc disease, obstructive sleep apnea, peripheral neuropathy, asthma, obesity, and post-traumatic stress disorder (PTSD).  Tr. 21-22.

At step three, the ALJ concluded that Giffin's impairments do not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id.* The ALJ found that Giffin had the RFC to perform light work, except she requires the ability  to alternate her position at will.  Tr. 24.  She can occasionally climb stairs and ladders, and frequently bend, balance, kneel, crouch, and crawl.   She should avoid concentrated exposure to hazards.  She is limited to simple routine repetitive work with brief intermittent contact with the public.  She could have occasional contact with coworkers and supervisors while doing goal-oriented, rather than production pace work.

At step four, the ALJ concluded Giffin was unable to perform any past relevant work.  Tr. 27-28.  However, at step five, the ALJ found jobs exist in significant numbers in the national economy that Giffin can perform, including production assembler, office clerk, and a reduced number of cashier jobs.  Tr. 28.  As a result, the ALJ concluded Giffin is not disabled.

# DISCUSSION

## I. The ALJ Did Not Err At Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen*, 482 US at 140-41. The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen*, 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen*, 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

Plaintiff contends the ALJ erred by failing to include major depression, rule-out somatization disorder, and rule-out bipolar disorder, as severe impairments at step two. Plaintiff notes the ALJ did identify PTSD as severe at step two. Tr. 21-22. Plaintiff argues that some of the symptoms of depression, bipolar disorder, and somatization disorder may be similar to those found with PTSD, and contends that the diagnoses "present separate limiting effects, that, when

considered in combination, may produce significantly more functional limitations than were assessed in Plaintiff's residual capacity determination." Plt.'s Reply at 2. However, Plaintiff does not identify any functional limitations arising from depression, rule-out bipolar, or rule-out somatoform disorder diagnoses that differ from the symptoms arising from PTSD.

The ALJ properly determined that Giffin had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless.

## II.  The ALJ Did Not Err in Finding Plaintiff Less than Fully Credible

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter,* 504 F.3d at 1036. When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen,* 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, "' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider...ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms...other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

The ALJ found Plaintiff not entirely credible concerning the limiting effects of her symptoms. Tr. 25-26. The ALJ noted the medical evidence did not support the severity of limitations alleged by Plaintiff. Tr. 25-26. Minimal objective findings can undermine a claimant's credibility when, as here, other reasons are present. *Burch v. Barnhart,* 400 F.3d 676, 680-81 (9th Cir. 2005). Plaintiff alleged back and leg pain were her greatest physical

Page 14 - FINDINGS AND RECOMMENDATION

impediments to working. Tr. 45. She testified she could lift ten pounds or less. Tr. 46. But in July and August 2012, Thomas Thrall, M.D., examined Plaintiff and concluded she could return to work on modified duty, full-time with a 30 pound lifting restriction. Tr. 25, 597-601. There was no back spasm and mild limitation of the range of motion. Tr. 597, 599.

In July 2012, Plaintiff was seen in the emergency room for an abrasion, and ambulated without difficulty. Tr. 676. In September 2012, Plaintiff reported increased leg pain and stress but Dr. Hindmarsh found no muscle atrophy and muscle strength 5/5 throughout with normal tone and symmetry. Tr. 613. In October 2012, Kolby Walker, M.D., found Plaintiff able to recall three out of three items immediately and after delay, could calculate serial threes without difficulty, and appropriately interpreted proverbs and similarities. Tr. 25-26, 647. The following month Plaintiff denied significant disturbance with anxiety, her mood was okay and her affect less anxious. Tr. 644. She displayed mild anxiety symptoms.

In early March 2013, Plaintiff was seen at urgent care for back "pain after bowling." Tr. 818. An MRI of the cervical spine showed "mild" findings with no significant stenosis or encroachment. Tr. 634. Plaintiff was seen by neurologist Sydney Piercey, M.D., on June 3, 2013. Tr. 659-61. Plaintiff reported leg weakness but was trying to walk daily. Tr. 659. Dr. Piercey reviewed the MRI and noted Plaintiff had normal concentration and memory. Tr. 660. Plaintiff had a full range of motion in the neck, with bilateral lower extremity "diffuse breakaway weakness difficult to objectively grade." *Id.*

On March 27, 2013, Plaintiff was seen in the emergency room for vaginal bleeding. Tr. 689. The physician noted "It is very difficult to penetrate this lady's belief system about her anatomy and physiology. . . . She did not find my explanation persuasive . . . ." Tr. 691. In

August 2013, Plaintiff was seen in the emergency room for a headache. Tr. 691. She denied back pain. Tr. 693. Plaintiff had a normal range of neck motion, normal strength and reflexes, and normal mood and affect. Tr. 694. In September 2013, Plaintiff was seen in the emergency room for a headache. Tr. 695. She had no back pain, joint swelling, or gait problem. Tr. 698. She had normal mood, affect, cognition, and memory. Tr. 699. The following month Plaintiff had a happy, bright affect, with intact cognition. Tr. 786. On November 23, 2013, Plaintiff was seen in the emergency room for a sore throat, with a normal mood and affect, attention span and concentration. Tr. 788-89.

The medical records fail to support the severity of symptoms Plaintiff alleged. The ALJ properly found this discrepancy to be a clear, convincing, specific, legitimate reason to find Plaintiff less than fully credible.

The ALJ found Plaintiff reported improvement with medication and treatment. Tr. 26. In April 2013, Plaintiff no longer needed medication for sleep, and Clonidine and Lexapro "decreased her depression and anxiety sufficiently." Tr. 639. The following month Plaintiff reported "significant improvement in panic attacks." Tr. 905. Through 2013, Plaintiff frequently had normal mood, affect, attention, and concentration. Tr. 792, 795, 809, 837.

The ALJ properly found Plaintiff's symptoms improved with medication and treatment, and this is a clear, convincing, specific and legitimate reason to find Plaintiff less than fully credible.

Finally, the ALJ noted that Plaintiff acted as a caregiver for her mother-in-law, which suggested greater physical ability than Plaintiff reported. Tr. 26, 895, 899, 906. Daily activities

inconsistent with alleged symptoms are a relevant credibility consideration. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

On this record, the ALJ provided clear, convincing, specific and legitimate reasons to find Plaintiff less than fully credible. The ALJ's credibility finding is supported by substantial evidence and should be affirmed.

## III. The ALJ Properly Weighed the Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions

that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A.  Richard Hindmarsh, M.D.

Plaintiff contends the ALJ erred in rejecting Dr. Hindmarsh's opinion.  In January 2014 Dr. Hindmarsh wrote a letter in which he stated that he believed Plaintiff "is no longer able to work on a full-time basis." Tr. 931.  Dr. Hindmarsh noted diagnoses of bipolar affective disorder, PTSD, and pain secondary to fibromyalgia, and stated Plaintiff "remains in a state where she suffers from chronic pain and very poor ability to concentrate.  She would not be able to be gainfully employed at any job.  She is also on medications that cause her to be fatigued to the degree that it would impact directly on her ability to work." *Id.*

In March 2014, a month after the ALJ's decision,  Plaintiff's counsel wrote a letter, endorsed by Dr. Hindmarsh, memorializing a telephone conversation in which Dr. Hindmarsh stated he had treated Plaintiff since October 2007.  Tr. 936.  Plaintiff had been diagnosed with fibromyalgia before Dr. Hindmarsh met her,  and Dr. Hindmarsh saw no reason to retest her for the condition..  Dr. Hindmarsh relied on August 2013 Linn County Mental Health records for the diagnosis of bipolar disorder.  Dr. Hindmarsh noted that PTSD was a more common diagnosis in the records, and the symptoms of the conditions can be similar.  Dr. Hindmarsh stated that Plaintiff's PTSD manifests as profound anxiety, he has observed the anxiety, and Plaintiff becomes upset easily and loses her train of thought.   Tr. 937.  Dr. Hindmarsh concluded Plaintiff "has been consistently and significantly impaired by the frequency and severity of her anxiety symptoms" since October 2007.   The mental health records upon which Dr. Hindmarsh relied noted a rule-out diagnosis of bipolar disorder.  Tr. 786.

The ALJ gave little or no weight to Dr. Hindmarsh's January 2014 opinion. Tr. 27. The ALJ noted there were no objective findings to support Dr. Hindmarsh's conclusions. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss,* 427 F.3d at 1216. The Commissioner points to Dr. Hindmarsh's records from September through December 2013 in which Plaintiff complained of a cold, leg swelling, a minor hip injury, a rash, constipation, nausea, and headache. Tr. 847, 851, 855, 862, 871. In September 2013, Plaintiff complained of depression and she was prescribed Sertraline. Tr. 866-68. In October 2013, Plaintiff reported anxiety and her dose of Sertraline was increased. Tr. 859-61. By late November and December Plaintiff had leg swelling, chest pain, and bronchitis but was described as alert, cooperative, and in no acute distress, with no complaints of depression or anxiety. Tr. 853, 849.

Although not considered by the ALJ, the court may consider Dr. Hindmarsh's March 2014 opinion to determine whether the ALJ's decision is supported by substantial evidence. In that opinion Dr. Hindmarsh states that Plaintiff has "been consistently and significantly impaired by the frequency and severity of her anxiety symptoms since she became [my] patient in October 2007, and those symptoms have gradually worsened over time." Tr. 937. Dr. Hindmarsh's opinion is contradicted by the fact that Plaintiff continued to work full-time from 2007 through June 2012.

On this record, the court should find the ALJ's rejection of Dr. Hindmarsh's opinion is supported by clear and convincing reasons and supported by substantial evidence.

**B. The GAF Scores**

The ALJ reasonably rejected the GAF scores due to their subjectivity.  Tr. 27.  At the time of Plaintiff's mental assessments, the GAF scale was used to report a clinician's subjective judgment of the patient's overall level of functioning.  *See,* Am. Psych. Ass'n., Diagnostic & Statistical Manual of Mental Disorder 31-34 (4th ed., text revision 2000)(DSM-IV-TR).  The Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability.  Am. Psych. Ass'n., Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013).  It was recommended the GAF be dropped from DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilties in its descriptors) and questionable psychometrics in routine practice.  *Id.*

The ALJ properly discounted the GAF scores because the scores include many factors, many of which have no bearing on occupational functioning.  Tr. 27.   A GAF score reflects the evaluator's subjective judgment about the person's symptom severity and psychological, social, and occupational functioning.  *See* DSM-IV-TR at 32.  If an individual's "symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two."  *Id.* At 33.  Because a low GAF score may have been based on an individual's self-reported symptomatology or reflect difficulties in a wide range of functional areas, the ALJ's determination to give those scores little weight should be found to be supported by substantial evidence.

## IV. The ALJ Did Not Have a Duty to Develop the Record Further

Plaintiff contends the ALJ erred by failing to order a psychological evaluation.  Plaintiff contends the record reveals diagnostic uncertainty of her mental health diagnoses, and that she

meets the diagnostic criteria for a Somatization Disorder.   In November 2012 Dr. Walker noted "Rule out somatization disorder." Tr. 644.   In November 2013 Nicole Desiderati, P.M.H.N.P. wrote "somatization disorder, rule out, bipolar disorder, rule out." Tr. 786.

The ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).   The record is not ambiguous.   Moreover, any error is harmless because the ALJ considered Plaintiff's pain complaints when formulating Plaintiff's RFC.   Plaintiff does not identify any functional limitation arising from a diagnosis of somatization disorder that differs from the functional limitations arising from her severe PTSD impairment.

The ALJ did not err by failing to develop the record further, and that determination should be found supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's final decision should be **AFFIRMED** and final judgment should be entered.

Page 21 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed.

*See,* FED.R.CIV.P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 95F.2d 1153 (9TH Cir. 1991).

DATED this *16th* day of May, 2016.

Honorable Paul Papak
United States Magistrate Judge

Page 22 - FINDINGS AND RECOMMENDATION